IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JASMINE ZUBER**, <br> *Plaintiff*, <br><br> v. <br><br> **REPUBLIC FIRST BANCORP INC. d/b/a REPUBLIC BANK, et al.**, <br> *Defendant*. | CIVIL ACTION <br><br> NO. 23-991 |

**MEMORANDUM RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Baylson, J.**                                                                                                                 **December 17, 2024**

This case involves Plaintiff's sexual harassment and retaliation claims against Defendant, Republic First Bancorp,[1] her former employer. Presently before the Court is Defendant's Motion for Summary Judgment (ECF 15). For the reasons explained below, Defendant's Motion is **DENIED**.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

This case was reassigned to the undersigned from Judge Pratter's docket. Before Judge Pratter could rule on the Motion for Summary Judgment, the Pennsylvania Department of Banking and Securities closed the Bank and appointed the FDIC as receiver. The FDIC then filed a Notice of Substitution (ECF 29) and a Motion to Stay the case pending Plaintiff's exhaustion of her administrative remedies (ECF 30). Shortly thereafter, the case was reassigned to the undersigned and the Motion to Stay was granted (ECF 35). After Plaintiff exhausted her administrative remedies, the Court reinstated the case (ECF 37) and the parties asked the Court to rule on the outstanding Motion for Summary Judgment (ECF 38).

---

[1] On April 26, 2024, the Pennsylvania Department of Banking and Securities closed Republic First Bancorp Inc. and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver.

1

Plaintiff brings claims under Title VII and the Pennsylvania Human Relations Act for sexual harassment, under hostile work environment and quid pro quo theories, and for retaliation. Compl., ECF 1.  Plaintiff, Zuber, worked for the Bank as a universal banker, she alleges that Hall, a store supervisor, sexually harassed her, for which the Bank is liable, and that the Bank fired her in retaliation.

### A. Undisputed Facts

Zuber and Hall worked the nightshift together.  Pl's Resp. to Def's Facts ¶ 45, ECF 18-1. On one occasion, Zuber and Hall had consensual sex at work.  Id. ¶ 22.  Approximately one week after the incident, on February 8, 2022, Zuber told Hall that she did not want to have sex at work again.  Id. ¶ 29.  However, on February 11, 2022, Hall again asked Zuber to have sex at work, which she refused.  Id. ¶ 30.  A heated argument ensued.  Id.

Less than one week later, on February 17, 2022, Zuber sent Hall a text message that read: "get transferred to a different branch or I'm telling HR."  Id. ¶ 37.  Later that same evening, Hall reported the relationship to the branch manager, Ms. Leitz.  Id. ¶ 40.

A few days later, on February 21, 2022, Leitz and Ms. Zangrilli, the Human Resources (H.R.) Director, met with both Zuber and Hall.  Zuber's meeting addressed her work performance and relationship with Hall.  Id. ¶ 42.  Zuber informed Zangrilli and Leitz of the relationship and that she did not want to have sex with Hall again.  Id. ¶ 45.  In response, Leitz changed Zuber's schedule and Zuber and Hall were moved to different shifts.  Id.  In his meeting, Hall confirmed the relationship.  Id. ¶ 46.  Also on February 21, 2022, Leitz became aware of an imbalance in Zuber's teller drawer from February 17, 2024.  Id. ¶ 48.  The next day, on February 22, 2022, the Bank began an investigation into the imbalance and Zuber was suspended pending the investigation.  Id. ¶¶ 48, 49.  The investigation concluded that there was

an overage of $1,000 in Zuber's teller drawer due to an improperly completed customer transaction. Id. ¶ 51.

Hall was ultimately fired for violating the Bank's fraternization policy, Id. ¶ 53, and Zuber for force balancing (overage in the teller drawer), Id. ¶ 55.

### B. Disputed Facts

There are essentially four disputes of genuine fact, whether (1) Hall was Zuber's supervisor, (2) Hall's conduct was severe or pervasive, (3) Zuber engaged in a protected activity, and (4) the force balancing investigation relates to Zuber's conversation with H.R. regarding Hall or her termination.

**Supervisor**

The parties dispute whether Hall was Zuber's supervisor. It is undisputed that as store supervisor Hall had the authority to issue coaching disciplines, Pl's Resp. to Def's Facts ¶ 5.

However, Zuber further alleges that Hall had the authority to audit her teller drawer and "step in to support higher level management when needed." Pl's Additional Facts ¶ 72, ECF 18-1. Zuber testified that Hall had been "there for a long time, and he ran the place, practically." Zuber Dep. 104:20-21, ECF 15-5.

This issue is complicated by conflicting testimony from Leitz and Zangrilli. Leitz answered yes, when asked whether store supervisors had a supervisory role. Leitz Dep. 45:1-13, ECF 15-7. Leitz testified that Hall could direct what the people on his shift did, issue coaching disciplines, and "step in to assist when needed." Id.[2] Leitz also testified that customer service associate levels one or two, of which Zuber was a level two, were in the direct line of reporting

---

[2] Leitz's full statement reads: "I mean, he would direct as far as when he was – if he was running that night's – that day's shift, he could direct as to what people should do, but he – I mean, he did nothing – I mean, there was nothing else as far as – I mean, they would do coaching if they needed coaching and they would also step in to assist when needed." Leitz Dep. 45:1-13.

3

to the store supervisor or senior store supervisor. Id. at 24:9-23, ECF 15-7, Pl's Resp. to Def's Facts ¶ 9.

In contrast, Zangrilli testified that store supervisors are involved in informal coaching of employees but do not have the authority to hire, fire, or impose discipline. Zangrilli Dep. 33:8-15, ECF 15-6.

**Hall's Conduct**

Defendant characterizes Hall's behavior as a single incident of "unwanted conduct," referring to when Hall asked Zuber to have sex at work on February 11, 2022, after she told him that she did not want to have sex at work. Pl's Resp. to Def's Facts ¶ 30.

Zuber's testimony is at times contradictory. She testified that she enjoyed the attention, Zuber Dep., 227:8-9, and would have considered having sex outside of work, Id. at 120:11-20. However, Zuber also testified that she only had sex at work because she felt compelled to given Hall's position, Id. at 104:8-21, and because Hall told her that he would help her become a manager if she had sex with him, Id. at 47:18-49:07. In total, Hall's conduct included multiple propositions, one instance of sex at work, one instance of Hall requesting sex at work after Zuber said that she wanted it to stop, and one argument at work in which Zuber repeatedly screamed that she did not want to have sex with Hall to both Hall and the on-duty security guard. Pl's Resp. to Def's Facts ¶ 30. Hall and Zuber also exchanged inappropriate text messages. Id. ¶¶ 17, 29, 31, 37, and Hall gave Zuber cash on at least one occasion and gave her money for her uniform and coffees, Id. ¶ 21.

**Protected Activity**

In the Motion for Summary Judgment, Defendant conceded, for the purposes of the Motion only, that Zuber engaged in a protected activity and experienced an adverse employment

action. Def's MSJ at 11, ECF 15-1. However, in the Reply in Support of the Motion for Summary Judgment, Defendant contested whether Zuber engaged in a protected activity. Def's Reply at 5, ECF 19. Likewise, Zuber's stance on what protected activity she engaged in is at times confusing. In her Response to Defendant's Motion for Summary Judgment, Zuber identifies the protected activity as the text to Hall where she communicated that she did not want to have sex at work again and that if he did not transfer branches, she would tell H.R. Pl's Resp. at 12. However, in other sections of her Response, Plaintiff discusses her February 21, 2022, meeting with Leitz and Zangrilli where she told them about the relationship with Hall and that she did not want to have sex with him anymore. Pl's Resp. to Def's Facts ¶¶ 42-43. Plaintiff also identifies telling Leitz that the force balancing investigation was only initiated because she told H.R. about the relationship. Id. ¶ 50.

**Force Balancing**

Both parties agree that the force balancing issue arose on February 17, 2022. Pl's Resp. to Def's Facts ¶ 48. It is also agreed that this was the same night that Zuber threatened to tell H.R. about the relationship unless Hall transferred branches, Id. ¶ 37, following which Hall reported the relationship to H.R. himself, Id. ¶ 40.

Zuber alleges that she knew that her teller drawer was out of balance and requested an audit. Id. ¶ 36. Plaintiff contends that Ms. Kou, the assistant store manager, asked Hall to audit Zuber's teller drawer, that Hall told Zuber that the teller draw was "fine," that Hall was the last person that touched the teller drawer that evening, and that Hall reported the force balancing to get rid of her. Id., Pl's Resp. at 8, 14, ECF 18. It is undisputed that after the Bank informed Zuber that she was being investigated for force balancing, Zuber denied responsibility to Leitz and attributed the imbalance to her refusing Hall's advances. Zuber told Leitz, "[a]t first I told

them in human resources I didn't want to have sex with him, but I didn't tell them we had sex already … When security came and all of this happened, I said, 'Nicole, I didn't force a balance. It's because of what happened with HR and Jalil. It's because I didn't want to have sex with him.'" Id. ⁋ 50. It is also undisputed that emails between Hall and Leitz confirm that on February 17, 2022, Zuber told Hall that there was a discrepancy in her balance, that Hall audited Zuber's teller drawer, and that Hall found that the drawer balanced. Leitz Depo. at 54:20-56:16.

In contrast, Defendant simply contends that Hall and Ms. Kou jointly audited Zuber's teller drawer because an audit needs to be conducted by two people. Def's Reply to Pl's Additional Facts ⁋ 71, ECF 40.

## II. PARTIES' CONTENTIONS

### A. Defendant's Motion for Summary Judgment

Defendant argues that it is entitled to summary judgment on Plaintiff's hostile work environment claim because (1) Hall's conduct was not severe or pervasive as Zuber only identified one instance of unwelcome conduct, and (2) there is no respondent superior liability as Hall was not Zuber's supervisor. Def's MSJ at 6, 8-9. Similarly, Defendant argues that Zuber's quid pro quo claim fails because Hall was Zuber's coworker, not supervisor, and the law does not allow for a quid pro quo claim to be premised on coworker harassment. Id. at 9. Finally, Defendant seeks summary judgment on Zuber's retaliation claim, arguing that (1) there is no causal connection between the protected activity and Zuber's termination because Zuber did not report the sexual harassment until after her termination, and (2) Zuber's termination was not pre-textual, rather Zuber was fired for violating the Bank's force balancing policy. Id. at 11-12, 13.

### B. Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment

Plaintiff argues that summary judgment is inappropriate. Plaintiff argues that (1) Hall was her supervisor, (2) even if Hall's conduct was not pervasive, it was severe, and (3) the temporal proximity between the protected activity and Plaintiff's termination creates a genuine dispute as to whether there is a causal connection between the two events and whether her termination was pretextual. Pl's Resp. at 6, 7, 12, 14

### C. Defendant's Reply in Support of its Motion for Summary Judgment

Defendant re-asserts its argument that Hall was not Zuber's supervisor because he did not have the ability to make tangible employment decisions regarding Zuber. Def's Reply at 5-8. Defendant also argues that Hall's conduct, an isolated incident, was neither severe nor pervasive. Id. at 4-5. Finally, Defendant argues that Zuber's retaliation claim fails because (1) Zuber did not engage in any protected activity, (2) to the extent that Zuber's claim relies on any retaliatory actions by Hall it fails because Hall was not Zuber's supervisor and thus respondent superior liability does not attach to Defendant for Hall's actions, and (3) even if Zuber's refusal to have sex with Hall or subsequent meeting with Zangrilli and Leitz were protected activities, the Bank took effective remedial action by ensuring that Hall and Zuber no longer worked evenings together. Id. at 5-8.

## III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## IV.  DISCUSSION

Viewing the facts in the light most favorable to the non-moving party, Zuber, there are several disputed, material facts that preclude summary judgment. The parties dispute whether (1) Hall was Zuber's supervisor, (2) Hall's conduct was severe or pervasive, (3) Zuber engaged in a protected employment activity, (4) a causal link exists between Zuber's engagement in a protected activity and her termination, and (5) Zuber's termination was pretextual.[3]

### A. Hostile Work Environment Claims

The parties dispute whether Hall was Zuber's supervisor and whether his conduct was severe or pervasive. Defendant's central argument in support of its motion for summary

---

[3] Claims brought under Title VII and the PHRA are analyzed coextensively. See Anderson v. Boeing Co., 694 F.App'x 84, 86 n.4 (3d Cir. 2017) (non-precedential).

judgment on the quid pro quo harassment claim is that a coworker cannot engage in quid pro quo harassment. The Court finds that there is a genuine question as to whether Hall was Zuber's supervisor, as such, summary judgment on the quid pro quo harassment claim is inappropriate. The Court also finds that there is a genuine question as to whether Hall's conduct was severe or pervasive. As there are genuine questions as to the two elements of a hostile work environment claim[4] that Defendant contests, *respondeat superior* liability and severity/pervasiveness, Plaintiff's hostile work environment harassment claim may proceed.

1. **Supervisor**

Whether "an employer may be vicariously liable for an employee's unlawful harassment" depends on whether "the employer has empowered that employee to take tangible employment actions against the victim, *i.e.,* to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Vance v. Ball State Univ., 870 F.3d 206, 216 (3d Cir. 2017).

There is a genuine dispute as to whether Hall was empowered to make tangible employment decisions regarding Zuber. As store supervisor, Hall was an hourly employee with the authority to issue coaching disciplines. Pl's Resp. to Def's Facts ¶¶ 4, 5. In addition to the coaching disciplines, Zuber alleges that Hall had the authority to audit her teller drawer, direct the tasks of people on his shift, and support higher level management as needed. Pl's Resp. at 8, Pl's Additional Facts ¶ 72. Zuber also alleges that Hall offered to help her advance in her career at the Bank and to help her make manager. Pl's Additional Facts ¶ 57.

---

[4] To make out a hostile work environment claim, Zuber must show that the discrimination: (1) was intentional because of her sex, (2) was severe or pervasive, (3) detrimentally affected her, (4) would detrimentally affect a reasonable person in like circumstances, and (5) can be attributed to Defendant via *respondeat superior* liability. See Mandela v. M&Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013).

9

Additionally, the testimony of the branch manager, Leitz, and H.R. Director, Zangrilli, are contradictory. Zangrilli's testimony asserts that Hall did not have the authority to make tangible employment decisions. Zangrilli Dep., 33:8-15. In contrast, Leitz testified that Hall had a supervisory role and could direct what people on his shift, *i.e.* Zuber, did. Leitz Dep. 45:1-13, ECF 15-7. While Leitz's testimony does not go so far as to say that Hall had the ability to fire Zuber, coupled with Zuber's testimony, it raises a genuine question as to whether Hall was Zuber's supervisor.

As the Supreme Court explained in Anderson, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 355. It is not for the Court to determine whether Zuber, Leitz, or Zangrilli's testimony is most credible.

2. **Severe or Pervasive**

Conduct need only be severe *or* pervasive to create a hostile work environment. See Castleberry v. STI Group, 863 F.3d 259, 264 (3d Cir. 2017). A single incident can be severe enough to make out a hostile work environment claim, provided the incident is "extreme to amount to a change in the terms and conditions of employment." Id. In Castleberry, a single use of the n-word was severe enough to make out a hostile work environment claim. Id.

In the sexual harassment context, the Third Circuit has concluded that a supervisor's conduct of repeatedly propositioning plaintiff, grabbing her, exposing himself to her, and attempting to take off her shirt were sufficiently severe or pervasive. Moody v. Atlantic City Bd. of Educ., 870 F.3d 206, 215 (3d Cir. 2017). The Third Circuit clarified "that touching, threats,

propositions of sex, or requests for dates, are [not] necessary to demonstrate a hostile work environment; other verbal comments can suffice where they are sufficiently severe or pervasive." Nitkin v. Main Line Health, 67 F.4th 565, 572 n.4 (3d Cir. 2023).

Courts have also found that three comments made to solicit sexual interaction paired with a separate instance of being asked on a date and as a single incident of a co-worker reaching under plaintiff's shirt and putting money in her bra were sufficient to establish a hostile work environment claim. See Grooms v. City of Phila., WL 4698856 at *6 (E.D. Pa. Sep. 28, 2018) (Padova); Winkler v. Progressive Bus. Publ'n, 200 F.Supp.3d 514, 519 (E.D. Pa. 2016) (Dalzell).

Defendant argues that Zuber's hostile work environment claim fails because she only alleges a single instance of unwelcome conduct – the February 11, 2022, incident where Hall asked her to have sex at work, after she had previously said that she did not want to have sex at work. Def's MSJ at 4-6. Even if Defendant's contention that Hall's conduct was limited to the February 11, 2022, incident is credited, Zuber may still be able to establish a hostile work environment claim. If Zuber can show that her termination was retaliation for reporting to Leitz and Zangrilli that she did not want to have sex with Hall at work again, then this single incident may be severe enough to create a hostile work environment claim.

However, viewing the facts in the light most favorable to Zuber, Hall's conduct went far beyond an isolated incident. Hall repeatedly propositioned Zuber, Zuber felt compelled to have sex with Hall at work given his status at the Bank, Hall continued to proposition Zuber after she asked him to stop, and the two engaged in a heated verbal argument at work, with Zuber repeatedly screaming that she did not want to have sex with Hall. Pl's Additional Facts ¶ 60, Pl's Resp. to Def's Facts ¶ 30. According to Zuber, while she may have liked the attention, she

11

agreed to have sex with Hall because he was her supervisor and promised to help her become a manager if she had sex with him. Zuber Dep. at 104:8-21, 47:18-49:07.

### B. Retaliation Claim

To establish a retaliation claim "a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000). The Court finds that there is a genuine question as to whether Zuber engaged in a protected activity. The Court also finds that there is a genuine question as to whether the timing of her firing creates a causal link between her engagement in that activity and her termination and casts doubt on the Bank's proffered reason for her termination. As such, summary judgment will not be granted on the retaliation claim.

#### 1. Protected Employment Activity

An employee's opposition to unlawful discrimination under Title VII is a protected activity so long as the employee has a reasonable belief that the activity constitutes unlawful discrimination. See Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 322 (3d Cir. 2008). An employee's opposition to unlawful discrimination "includes not only an employee's filing of formal charges of discrimination against an employer but also 'informal protests of discriminatory employment practices, including making complaints to management.'" Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015) (quoting Curay-Cramer v. Ursuline Acad. of Wilmington, Inc., 450 F.3d 130, 135 (3d Cir. 2006)). "When an employee communicates to her employer a belief that the employer has engaged in ... a form of employment discrimination,

that communication virtually always constitutes the employee's opposition to the activity." Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 555 U.S. 271, 276 (2009).

Viewing the facts in the light most favorable to Zuber, she engaged in a protected employment activity. At the very least, Zuber's conversation with Leitz after the force balancing investigation was initiated constitutes a protected employment activity. In that conversation, Zuber told Leitz, the branch manager, that the force balancing investigation was prompted by Zuber's meeting with H.R. in which she reported the relationship with Hall and said that she did not want to have sex with Hall. Pl's Resp. to Def's Facts ¶ 50. This creates a genuine question as to whether Zuber believed that the Bank's investigation was unlawful retaliation for her reporting the relationship and her desire not to have sex with Hall.

### 2. Causal Connection

To establish a causal connection "a plaintiff must show either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism, coupled with timing, to establish a causal link." Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 258 (3d Cir. 2014).

Defendant relies on Windfelder v. May Department Stores Co., to support its argument that no causal connection exists between Zuber's report of the harassment and termination. 93 F. App'x 351 (3d Cir. 2004) (non-precedential). In Windfelder, an employee complained of discrimination after being placed on a final warning, the Third Circuit held that the employee was properly fired for not meeting the benchmarks in the warning plan. Id. at 355. The Third Circuit reasoned that the employer did not need to halt already initiated termination proceedings simply because the employee alleged retaliation. Id.

Conversely, Zuber argues that suspicious temporal proximity exists between her rejection of Hall and her firing because the events took place in the span of a week. Pl's Resp. at 12-13. The suspicious temporal proximity is borne out in Defendant's Statement of Disputed and Undisputed Facts. On February 8, 2022, Zuber texted Hall that she no longer wanted to have sex at work. Def's Facts ¶ 29, ECF 15-2. On February 11, 2022, Hall again asked Zuber to have sex at work and an argument ensued. Id. at ¶ 30. On February 17, 2022, Zuber texted Hall that if he did not transfer branches, she would report the relationship to H.R., Id. at ¶ 37, after which Hall himself reported the relationship to H.R., Id. at ¶ 40, and the force balancing issue arose, Id. at ¶ 32. On February 21, 2022, Leitz became aware of the force balancing issue, Id. at ¶ 48, Leitz and Zangrilli met with Zuber to discuss her performance and relationship with Hall, Id. at ¶ 42, and Zuber told Leitz and Zangrilli that she no longer wanted to have sex with Hall, Id. at ¶ 43. On February 22, 2022, Zuber was suspended. Id. ¶ 49. After the investigation began, Zuber told Leitz that the imbalance was due to her refusing Hall's advances. Id. at ¶ 50. And on February 25, 2022, Zuber was terminated for force balancing. Id. at ¶ 53.

While these events took place over the span of two weeks, not one, the bank's knowledge of the protected activity still occurred very close in time to Zuber's firing. The bank knew of the relationship and that Zuber wanted it to stop before suspending her. Further, within just three days of Zuber's suspension, the bank learned of the sexual harassment complaint and terminated Zuber.

### 3. Pretextual Termination

Under the McDonnell Douglas burden shifting framework, once a plaintiff has made out a prima facie case of retaliation, a Defendant may proffer a legitimate reason for the employment decision. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-803 (1973). However, a

14

plaintiff may avoid summary judgment by offering evidence that "allow[s] a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons, was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (internal citations omitted). This Circuit has found "that factors such as the defendant's credibility, the timing of an employee's dismissal, and the employer's treatment of the employee could raise an inference of pretext which would make summary judgment for the employer inappropriate." Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638-39 (3d Cir. 1993).

In two of the cases that Defendant relies on, Windfelder and Velazquez v. ES3 York LLC, WL 6735647 (M.D. Pa. 2015), plaintiffs where first suspended for repeated and ongoing performance issues, then filed harassment claims, and were subsequently fired for continuing to engage in the activity for which they were suspended – failing to meet benchmarks and taking unauthorized breaks. Additionally, in both cases, plaintiffs' complaints were filed two months before their termination. In contrast, Zuber told H.R. about the relationship and that she wanted it to end, was suspended the next day, and during the three days between her suspension and termination told her branch manager that the force balancing investigation was retaliation for her reporting the relationship to H.R. Additionally, Plaintiff alleges that she knew that her teller drawer was not balanced, asked Hall to audit it, Hall told her that her balance was "fine," and then Hall reported the force balancing issue to get rid of her. Pl's Resp. at 8, 14. Emails between Hall and Leitz confirm that Hall audited Zuber's draw that evening and found it to be balanced. Leitz Depo. at 54:20-56:16. The timing of Zuber's dismissal casts doubt on Defendant's proffered reason for Zuber's termination.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is **DENIED**.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 23\23-991 Zuber v Republic FIrst Bancorp\23-991 MSJ Memo Opinion Final.docx